KERR, APPELLANT, *v*. BLAINE ET AL., RESPONDENTS.

(No. 3,424.)

(Submitted November 9, 1914. Decided November 23, 1914.)

[144 Pac. 566.]

*Personal Property—Sales—Fraudulent Transfers—Mortgages—
Sale by Sheriff—Applicability of Statute.*

Personal Property—Fraudulent Conveyances—Judicial Sales.
    1.  Section 6128, Revised Codes, condemning sales of personal property not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred, does not apply to judicial sales.

    [As to retention of property by vendor after sale, 14 Am. Dec. 383. As to change of possession sufficient as against creditors and subsequent purchasers, see note in 97 Am. Dec. 340. As to allowing chattel mortgagee to retain possession of property and sell it, see note in 15 Am. St. Rep. 912.]

Same—Mortgages—Sale by Sheriff—Fraudulent Transfers—Applicability of Statute.
    2.  A sale of personal property by a sheriff under a provision in a chattel mortgage authorizing him *inter alia* to sell the property, in case default should be made in the payment of the principal or interest, *held* not a judicial sale, but to fall within the letter and spirit of section 6128, Revised Codes above.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by Alex Kerr against William and Robert Blaine. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

*Mr. D. A. Prior* and *Mr. E. L. Bishop* submitted a brief in behalf of Appellant; *Mr. Prior* argued the cause orally.

Appellant contends that section 6128, Revised Codes, is not applicable to the sheriff's sale by virtue of which appellant claims title to the cattle in question for the following reasons:

1. Because the publicity and notoriety creates an exception in favor of public sales. (1 Freeman on Executions, 3d ed., 715; *Lowe* v. *Matson*, 140 Ill. 108, 29 N. E. 1036; *Sechler Carriage Co.* v. *Dryden*, 71 Ill. App. 583; *Pennington* v. *Chandler*,

5 Harr. (Del.) 394; *Clark* v. *Cox,* 118 Mo. 652, 24 S. W. 221; *Wyatt* v. *Stewart,* 34 Ala. 716; *Foster* v. *Pugh,* 12 Smedes & M. (Miss.) 416; *Boardman* v. *Keeler,* 1 Aiken (Vt.), 158, 15 Am. Dec. 670; *Greathouse* v. *Brown,* 5 T. B. Mon. (Ky.) 280, 17 Am. Dec. 67; *Garland* v. *Chambers,* 11 Smedes & M. (Miss.) 337, 49 Am. Dec. 63.)

2. Because the sale being made by the sheriff in his official capacity, pursuant to statutory authority, must be presumed to be fair until the contrary is shown. (*Matteucci* v. *Whelan,* 123 Cal. 312, 69 Am. St. Rep. 60, 55 Pac. 990; *Bisbing* v. *Third Nat. Bank,* 93 Pa. 79, 39 Am. Rep. 726; *Huebler* v. *Smith,* 62 Conn. 186, 36 Am. St. Rep. 337, 25 Atl. 658; *Clark* v. *Cox,* 118 Mo. 652, 24 S. W. 221; *Myers* v. *Harvey,* 2 Penr. & W. (Pa.) 481, 23 Am. Dec. 60.)

3. Because the sale to appellant was not made by Eli Wagoner, the former owner, in whose possession the cattle in question were claimed by respondents to have been left after the sale. (*Huebler* v. *Smith, supra; Guignard* v. *Aldrich,* 10 Rich. Eq. (S. C.) 253; *Simerson* v. *Branch Bank,* 12 Ala. 205; *Montgomery's Exrs.* v. *Kirksey,* 26 Ala. 172.)

In *Wyatt* v. *Stewart,* 34 Ala. 716, it was held that: "The retention of possession, after the sale, by the maker of a deed of trust, of property sold upon notice at public outcry by the trustee, is not *prima facie* evidence of fraud."

*Messrs. Freeman & Thelen* and *Mr. J. W. Speer,* for Respondents, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1911 Eli Wagoner executed a chattel mortgage upon certain personal property to the First State Bank of Cascade to secure a debt due to the bank. In June, 1912, the debt having matured and not having been paid, the bank placed in the hands of the sheriff of Cascade county a certified copy of the chattel mortgage, with directions to him to execute the power

of sale contained in it.   On June 25 the sheriff sold at auction certain of the property described in the mortgage.   Of that property this plaintiff, Alex Kerr, purchased eighteen yearlings, six cows and one bull.   In August following, Wagoner sold these same cattle to C. C. Chambers, and later in the same month Chambers sold them to William and Robert Blaine.   This action in claim and delivery was brought by Kerr to recover the possession of the cattle or their value, alleged to be $1,000. Issues having been joined, the cause was tried to the court sitting with a jury, resulting in a verdict and judgment in favor of the defendants.   From that judgment, plaintiff has prosecuted this appeal.

Upon the trial, the evidence tended to show that when the plaintiff made his purchase at the sale by the sheriff, he did not take possession of the cattle but left them in the possession and under the control of Eli Wagoner, the former owner; that Chambers was a subsequent purchaser from Wagoner for value without notice of plaintiff's claim; and that, likewise, Blaine Brothers were innocent purchasers for value.   The theory upon which the trial court proceeded was, that the sale by the sheriff under the power contained in the chattel mortgage fell within the provisions of section 6128, Revised Codes, and therefore there were submitted to the jury but two questions: (a) Was there an immediate delivery of the cattle to Kerr at the date of the sheriff's sale, followed by an actual and continued change of possession from Eli Wagoner to plaintiff; and (b) were Chambers and Blaine Brothers purchasers for value without notice of plaintiff's claim?   The general verdict answered the first inquiry in the negative, and the latter in the affirmative; and this appeal presents only the question of the correctness of the trial court's theory of the case.

The chattel mortgage in question was a stereotyped form in general use in this state at the time it was executed.   It provided that the mortgagor might remain in possession of the mortgaged property, subject, however, to a number of contingencies.   If default should be made in the payment of the princi-

pal debt or interest, or if the mortgaged property should be attached at the instance of other creditors, or if any of it should be removed from Cascade county or concealed or in any other manner disposed of, or if the mortgagee should deem the possession of the property necessary to the security of its debt, then the mortgage provided that the mortgagee, its agent or attorney, or the sheriff of Cascade county, should have the right to the immediate possession of the property, with authority to sell the same at public or private sale.

The statute in force at the time these transactions occurred provided: "It is lawful for the mortgagor of personal property to insert in his mortgage a clause authorizing the sheriff of the county in which said property, or any part thereof, may be, to execute the power of sale therein granted to the mortgagee, his legal representative and assigns, in which case the sheriff of such county, at the time of default, at the request of the mortgagee, must and it is hereby made his duty to advertise and sell the whole or any part of the mortgaged property, wherever it may be, in the manner provided in such mortgage." (Sec. 5769, Rev. Codes.) Our statute upon fraudulent conveyances provides, among other things: "Every transfer of personal property * * * is conclusively presumed if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors, while he remains in possession * * * and against purchasers and encumbrancers in good faith subsequent to the transfer." (Sec. 6128, Rev. Codes.) That this statute does not apply to a judicial sale is apparent from its very terms. A judicial sale is one made by order of a [1, 2] court, and not by the voluntary act of the owner of the property involved. A sale under a chattel mortgage, such as the one before us, though made by the sheriff, can only be made by him by and with the consent of the mortgagor. Unless such consent is expressed in the mortgage, the sheriff cannot by

virtue of his office, or otherwise, interfere any more than an entire stranger. The purpose of the provision in section 5769 above is not to enlarge the powers and duties of the sheriff, but to enable the parties to the chattel mortgage to require his services, if they choose to do so, and to enforce their request when made. The sale by the sheriff under the power conferred in the chattel mortgage in this instance did not bear any analogy to a judicial sale. The mortgagor, and not the sheriff, determined whether notice of such sale should or should not be given, the character of notice, if any was to be given, and whether the sale, when made, should be public or private. The only duty devolving upon the sheriff when his services were demanded was to "sell the whole or any part of the mortgaged property   *   *   *   in the manner provided in such mortgage."

From the rule that judicial sales are not within the statutes which condemn sales of personal property not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred, authorities may be found which, by a parity of reasoning, deduce the conclusion that sales by trustees under powers conferred by trust deeds and similar instruments, which would include chattel mortgages of the character of the one before us, are also exempt; but such authorities proceed upon the theory that it is the publicity of the judicial sale which exempts it, whereas, in our judgment, it is its character as the act of the court which takes it without the rule, and the question of publicity does not enter into consideration. (1 Freeman on Execution, sec. 151; *Kelly* v. *Hart*, 14 Vt. 50.) If mere publicity is the determining factor, then every sale by an owner in possession of personal property is taken without the statute if, perchance, he publishes the fact that he offers his property for sale, but such is not the letter nor the meaning of the statute. The sale by the sheriff in this instance partakes much more of the characteristics of a sale by an auctioneer employed by the owner, and such sale is clearly within the letter and spirit of the law. (*Rogers* v. *Vail*, 16 Vt. 327; 2 R. C. L. 1135.)

But the sale now in question should be held to fall within the statute for the stronger reason. The very evils which called forth the rule against fraudulent conveyances at common law even before it crystallized in the original statute of 13 Elizabeth, Chapter 5, are given special prominence here. By permitting Eli Wagoner to remain in possession of this property after sheriff's sale, plaintiff placed Wagoner in a position where he might have secured credit upon the faith of his ownership of it, and did place him in a position where he resold the cattle to an innocent purchaser for value who had no notice of plaintiff's claim. Wagoner's possession was *prima facie* evidence of his ownership of the cattle. (Rev. Codes, sec. 7962, subds. 11, 12.) There was not any provision of law at that time for making a public record of the sale, and when Chambers caused the records to be searched and found only the chattel mortgage of record and it unsatisfied, he had the right to indulge the further presumption that title to the cattle remained in Wagoner and that the debt secured had not been discharged, for section 5771, Revised Codes, then in force, required that as soon as the obligation secured by a chattel mortgage was discharged, a satisfaction of the mortgage signed by the mortgagee *must* be indorsed upon it or filed with the county clerk and the proper notations made in the record, and the presumption is, ''That the law has been obeyed.'' (Sec. 7962, Rev. Codes, subd. 33.)

Holding, as we do, that a sale by the sheriff under a power contained in a chattel mortgage falls within the scope of section 6128 above, the conclusion that the trial court properly confined the issues to the two questions which the instructions cover, follows as of course.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.